**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
ELAINE WANG,                              :
                                          :
                Plaintiff,                :   Civil Action No. _____
                                          :
v.                                        :   COMPLAINT FOR VIOLATIONS OF
                                          :   SECTIONS 14(a) AND 20(a) OF THE
QEP RESOURCES, INC., TIMOTHY J.           :   SECURITIES EXCHANGE ACT OF
CUTT, PHILLIPS S. BAKER, JR., JULIE A.    :   1934
DILL, JOSEPH N. JAGGERS, MICHAEL J.       :
MINAROVIC, MARY SHAFER-MALICKI,           :   JURY TRIAL DEMANDED
AND BARTH E. WHITHAM,                     :
                                          :
                Defendants.               :
--------------------------------------------------------  :
```

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against QEP Resources, Inc., ("QEP or the "Company") and the members QEP's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between QEP and Diamondback Energy, Inc. and its affiliates ("Diamondback").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on January 22, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Bohemia Merger Sub, Inc., a wholly owned subsidiary of Diamondback, will merge with and into QEP with QEP surviving as a direct, wholly owned subsidiary of Diamondback (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each QEP stockholder will receive 0.050 of a share of Diamondback common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked QEP's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Evercore Group L.L.C. in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to QEP's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice. The Company has hired Georgeson LLC as its proxy solicitor, with headquarters in New York, New York. Further, the closing of the Proposed Transaction will take place in the New York offices of the Company's legal advisor, Akin Gump Strauss Hauer & Feld LLP.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the conduct at issue occurred in this County, and because Defendants transact business in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of QEP stocks and has held such stocks since prior to the wrongs complained of herein.

10.    Individual Defendant Timothy J. Cutt has served as a member of the Board since January 2019 and is the President and the Chief Executive Officer of the Company.

11.    Individual Defendant Phillips S. Baker, Jr. has served as a member of the Board since 2010.

12.    Individual Defendant Julie A. Dill has served as a member of the Board since 2013.

13.    Individual Defendant Joseph N. Jaggers has served as a member of the Board since 2019.

14.    Individual Defendant Michael J. Minarovic has served as a member of the Board since 2017.

15.     Individual Defendant Mary Shafer-Malicki has served as a member of the Board since 2017 and as Board Chair since 2020.

16.     Individual Defendant Barth E. Whitham has served as a member of the Board since 2019.

17.     Defendant QEP a Delaware corporation and maintains its principal offices at 1050 17th Street, Suite 800, Denver, Colorado 80265.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "QEP."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

20.     QEP, operates as a crude oil and natural gas exploration and production company in the United States. The company conducts exploration and production activities in the Permian Basin in Western Texas; and Williston Basin in North Dakota. As of December 31, 2019, it had estimated proved reserves of approximately 382.3 million barrels of oil equivalent. The company sells oil, condensate, gas, and natural gas liquids to refiners, marketers, midstream service providers, wholesale marketers, industrial users, local distribution companies, and utility and other companies. QEP Resources, Inc. was incorporated in 2010 and is headquartered in Denver, Colorado.

21.     On December 21, 2020, the Company and Diamondback jointly announced the Proposed Transaction:

4

MIDLAND, Texas, Dec. 21, 2020 (GLOBE NEWSWIRE) -- Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and QEP Resources (NYSE: QEP) ("QEP") today announced that they have entered into a definitive agreement under which Diamondback will acquire QEP in an all-stock transaction valued at approximately $2.2 billion, including QEP's net debt of $1.6 billion as of September 30, 2020. The consideration will consist of 0.05 shares of Diamondback common stock for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. The transaction was unanimously approved by the Board of Directors of each company.

**TRANSACTION HIGHLIGHTS:**

- Adds material Tier-1 Midland Basin inventory that competes for capital immediately in Diamondback's portfolio
- Accretive on all relevant 2021 per share metrics including cash flow per share, free cash flow per share and leverage, before accounting for synergies
- Lowers 2021 reinvestment ratio and enhances ability to generate free cash flow, de-lever and return capital to stockholders
- Significant, tangible annual synergies of at least $60 - $80 million comprised of:
- G&A savings
- Cost of capital and interest expense savings
- Improved capital efficiency from high-graded development
- Physical adjacencies to increase lateral lengths
- Significant adjacent Permian midstream assets
- Diamondback is expected to maintain its Investment Grade status
- Significant majority of Diamondback's capital will now be allocated to the Northern Midland Basin

**QEP HIGHLIGHTS:**

- Approximately 49,000 net acres in the Midland Basin primarily held by production allowing for capital efficient development
- Q3 2020 average production of 48.3 MBO/d (76.7 MBOE/d); Q3 2020 average Permian production of 30.5 MBO/d (47.6 MBOE/d)
- 48 current drilled but uncompleted wells ("DUCs"); DUC balance expected to be worked down along with Diamondback's DUC balance in 2021, lowering 2021 reinvestment ratio
- QEP's Williston assets will be considered non-core and will be used to harvest cash flow or they will be divested, pending market conditions, with potential sale proceeds to be used towards debt reduction
- Significant adjacent Permian midstream infrastructure
- The pending QEP acquisition, together with the previously announced pending acquisition of assets from Guidon Operating LLC ("Guidon"), will bring Diamondback's total leasehold interests to over 276,000 net surface acres in the Midland Basin (429,000 Midland and Delaware Basin net acres)

"The acquisition of QEP also checks every box of Diamondback's corporate development strategy. The business combination with QEP and the Guidon transaction are accretive on all relevant 2021 financial metrics including free cash flow per share, cash flow per share and leverage, even before accounting for synergies. Most importantly, the addition of this Tier-1 resource competes for capital right away in Diamondback's current portfolio, and we will now be able to allocate most of our capital to the high-returning Midland Basin for the foreseeable future. Pro forma for these transactions, Diamondback is also expected to maintain its Investment Grade status, ensuring access to capital. As stated in past public commentary, Diamondback does not need to participate in industry consolidation to simply get bigger. We participate in corporate development opportunities that we firmly believe will increase the long-term value of our stockholders' investment," stated Travis Stice, Chief Executive Officer of Diamondback.

Mr. Stice continued, "Diamondback's expectations for capital allocation in 2021 remain unchanged: we are expecting to hold pro forma fourth quarter 2020 oil production flat through 2021 in the most capital efficient manner possible, which has improved with today's announcements. Our differentiated cost structure, combined with the addition of this top quartile resource, will allow Diamondback to consistently generate free cash flow and grow our return of capital program to our stockholders."

Tim Cutt, President and Chief Executive Officer of QEP, stated, "We believe that this strategic merger with Diamondback, along with the addition of the Guidon assets, provides our shareholders with an exciting investment opportunity, now and in the future. The large contiguous Tier-1 acreage position in the Northern Midland Basin is expected to lead to operational synergies and deliver capital efficiencies beyond what each company could achieve independently. I believe in this combination and look forward to being a long-term shareholder and watching the value of the company grow with time."

Mr. Cutt continued, "I also want to take this opportunity to recognize QEP's employees and publicly thank them for their dedication and hard work in driving QEP's success. Their tireless efforts over the past several years led to a culture of peer leading operational excellence, safety and efficiency."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, stockholders of QEP will receive 0.05 shares of Diamondback common stock in exchange for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. Upon closing the transaction and excluding the impact of shares to be issued in the previously announced acquisition of assets from Guidon, Diamondback stockholders will own approximately 92.8% of the combined company, and QEP stockholders will own approximately 7.2%.

Diamondback remains committed to conservative financial management and is expected to maintain its Investment Grade credit ratings pro forma for the transaction.

The transaction has been unanimously approved by the Boards of Directors of Diamondback and QEP and is expected to be completed in the first quarter or early in the second quarter of 2021, subject to the approval of QEP stockholders, the satisfaction of certain regulatory approvals and other customary closing conditions.

Upon closing, Diamondback's Board of Directors and executive team will remain unchanged. Additionally, the Company will continue to be headquartered in Midland, Texas.

**ADVISORS**
Goldman Sachs & Co. LLC is serving as lead financial advisor to Diamondback, with Moelis & Company also serving as financial advisor to Diamondback. Akin Gump Strauss Hauer & Feld LLP and Gibson, Dunn & Crutcher LLP are serving as legal advisors to Diamondback. Evercore and Latham & Watkins LLP are serving as exclusive financial advisor and legal advisor to QEP, respectively.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that QEP's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

23.     On January 22,  2021, QEP and Diamondback jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.    The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Evercore in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Diamondback Projections") and provided them to the Board and Evercore by management of both QEP and Diamondback with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.    For the Company Projections and the Diamondback Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2024: (i) Adjusted EBITDA; (ii) Free Cash Flow and (iii) Net Debt/Adjusted EBITDA as calculated by each of the Company's and Diamondback's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these

non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

28.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to Evercore's *Net Asset Value for QEP on a Standalone Basis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 8% to 35%; (ii) all line items used to calculate the Company's pre-tax cash flows; (iii) the range of total reserve value under each of the QEP Management Plan Pricing and the NYMEX Strip Pricing scenarios; (iv) the present value of the future estimated effects of QEP's hedging based on the hedge portfolio as of December 9, 2020; (v) the present value of the general and administrative expenses; (vi) the present value of cash taxes; and (vii) the number of fully diluted outstanding shares of QEP common stock.

30.     With respect to Evercore's *Discounted Cash Flow Analysis for QEP on a Standalone Basis*, the Registration Statement fails to disclose: (i) the terminal values of QEP; (ii) the Company's unlevered free cash flows and all line items used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.0% to 3.0%; (iv) the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; (v) the basis and inputs for using the EBITDAX multiples ranging from 3.5x to 4.5x to estimated 2024 EBITDAX; (vi) the number of fully diluted outstanding of QEP common stock.

31.     With respect to Evercore's *Premia Paid Analysis*, the Registration Statement fails to disclose the premia and transactions observed by Evercore in the analysis.

32.     With respect to Evercore's *Discounted Cash Flow Analysis for Diamondback on a Standalone Basis*, the Registration Statement fails to disclose: (i) the terminal values of Diamondback; (ii) the Diamondback's unlevered free cash flows and all line items used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.0% to 3.0%; (iv) the inputs and

assumptions underlying the discount rates ranging from 11.0% to 9.0%; (v) the basis and inputs for using the EBITDAX multiples ranging from 5.5x to 7.5x to estimated 2024 EBITDAX; (vi) the number of fully diluted outstanding of Diamondback common stock; and the market value of Diamondback's direct interest in Viper Energy Partners and Rattler Midstream.

33.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the

Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of QEP within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of QEP, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of QEP, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of QEP, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

44.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 25, 2021                           **WOLF HALDENSTEIN ADLER**
                                                  **FREEMAN & HERZ LLP**

                                        By:  */s/ Gloria Kui Melwani*
                                             Gloria Kui Melwani
                                             270 Madison Avenue
                                             New York, NY 10016
                                             Telephone: (212) 545-4600
                                             Facsimile: (212) 686-0114
                                             Email: melwani@whafh.com

                                             *Attorneys for Plaintiff*